UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEREMY S.,

                                  Plaintiff,

                                  <u>DECISION AND ORDER</u>

                                  21-CV-0357L

          v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On January 25, 2019, plaintiff filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging an inability to work since November 25, 2017. (Administrative Transcript, Dkt. #6 at 15). His applications were initially denied. Plaintiff requested a hearing, which was held July 14, 2020 via teleconference before Administrative Law Judge ("ALJ") Vincent M. Cascio. The ALJ issued an unfavorable decision on August 31, 2020 (Dkt. #8 at 15-26). That decision became the final decision of the Commissioner when the Appeals Council denied review on February 2, 2021. (Dkt. #6 at 1-3). Plaintiff now appeals.

The plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) and requests remand of the matter for further proceedings (Dkt. #7), and the Commissioner has

cross moved (Dkt. #9) for judgment on the pleadings. For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, and concluded that plaintiff had the following severe impairments, not meeting or equaling a listed impairment: degenerative disc disease of the lumbar spine, status post laminectomy surgery with post laminectomy syndrome; chronic pain syndrome; complex regional pain syndrome; obesity; severe chronic venous hypertension and congestion; and pelvic varices and pelvic derived venous disease of the lower extremities with chronic venous insufficiency and symptomatic varicose veins. (Dkt. #6 at 17-18).

Because plaintiff also claimed to suffer from attention deficit hyperactivity disorder and alcohol abuse disorder in remission, the ALJ applied the special technique for mental impairments. He concluded that plaintiff has a mild limitation in understanding, remembering, or applying information, no limitation in interacting with others, no limitation in concentration, persistence and pace, and no limitation in adapting or managing himself. (Dkt. #6 at 18-19). He accordingly found plaintiff's mental health impairments to be non-severe, but indicated that his RFC finding

"reflects the degree of limitation" determined by application of the special technique. (Dkt. #6 at 22).

Plaintiff was 44 years old on the alleged onset date, with a high school education and past relevant work as an industrial truck operator, and mix operator/light and oven operator. (Dkt. #6 at 24). The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work, with no more than occasional stooping, balancing, crouching, kneeling, crawling, and climbing of ramps or stairs. Plaintiff can never climb ladders, ropes, or scaffolds, nor be exposed to unprotected heights or hazardous machinery. (Dkt. #6 at 20).

When presented with this RFC as a hypothetical at the hearing, vocational expert Dawn Blythe testified that such an individual could perform the sedentary unskilled jobs of ticket counter, document preparer, and addresser. (Dkt. #6 at 25). The ALJ accordingly found plaintiff not disabled.

**I.      Medical Opinions of Record**

Plaintiff contends that the ALJ erred in his assessment of the medical opinions of record with respect to plaintiff's exertional RFC,[1] and that his rejection, in whole or in part, of all of those opinions resulted in an RFC determination that was unsupported by substantial evidence, and constituted the substitution of layperson opinion for competent medical opinion.

The Court concurs.

Pursuant to recent amendments to agency regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."

---

[1] Plaintiff does not allege, nor does the Court find, that the ALJ committed any errors with respect to his finding that plaintiff did not have any severe mental impairments, and did not require other and further RFC limitations to account for mental symptoms.

3

20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider all medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Commissioner*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022). "Although an ALJ may afford various weights to portions of a medical source opinion, the ALJ is still required to provide reasoning to support [his or] her various weight determinations," in order to permit meaningful judicial review. *Yasmine P. v. Commissioner*, 2022 U.S. Dist. LEXIS 154176 at *10 (W.D.N.Y. 2022).

### A.     Medical Opinions Regarding Plaintiff's Exertional RFC

The record contained medical opinions from three treating or examining physicians, assessing plaintiff's exertional RFC.

Consulting internist Dr. Russell Lee examined plaintiff on April 4, 2019. Dr. Lee noted plaintiff's self-reported history of nerve pain, nerve damage, disc herniation, back pain exacerbated by prolonged standing, lifting, and bending, and prior spinal surgeries. On examination, Dr. Lee noted a limp favoring the right side, inability to walk on heels and toes, squat reduced to ¼ of normal, reduced range of lumbar spinal motion, positive straight leg raising tests on the left side (both sitting and supine), reduced range of motion and strength in the left ankle, and purple discoloration of the foot with edema up to the mid-calf. Dr. Lee reviewed X-rays of the

lumbosacral spine showing mild degenerative changes at L5-4 and moderate degenerative changes at L4-S1. He assessed "moderate to severe limitation to activities involving prolonged standing, and walking great distances[, and] moderate limitation to activities involving bending, lifting, and squatting." (Dkt. #6 at 422-25).

Three weeks later on May 1, 2019, plaintiff presented to treating osteopathic physician Dr. Brooke Kelly with complaints of lower back pain, left leg and foot pain and weakness, foot drop, and parethesias (prickling sensation). Dr. Kelly examined plaintiff and noted limping gait, tenderness of the lumbar paraspinal muscles, reduced sensation and strength in the left lower extremity, inability to rise on toes, muscle atrophy in the left leg, and left leg discoloration and edema below the knee. She diagnosed chronic pain syndrome, chronic left-sided low back pain with left-sided sciatica, left lumbosacral radiculopathy, and lumbar post-laminectomy syndrome. In her treatment notes, Dr. Kelly opined that plaintiff should lift no more than 50 pounds rarely, and 20 pounds frequently. Dr. Kelly also noted that plaintiff's left leg weakness would be permanent. (Dkt. #6 at 434-39).

On September 4, 2019, Dr. Kelly completed an RFC form diagnosing permanent lumbar radiculopathy and left leg weakness since 2006, and assessed moderate limitations in sitting, standing, walking, lifting and carrying, and climbing, and indicated that plaintiff could lift up to 20 pounds rarely, and could never lift more than 50 pounds. (Dkt. #6 at 610-11).

In a second RFC form completed December 2, 2019, Dr. Kelly again found plaintiff moderately limited in sitting, standing, walking, lifting and carrying, and climbing, and additionally found moderate limitations in functioning in a work setting at a consistent pace. She opined that plaintiff should never lift more than 20 pounds, and should avoid lifting less than 20 pounds for more than 2-3 hours in a workday. She specified that plaintiff's vascular issues in his

left foot and leg would prevent him from standing or walking for more than an hour at a time. (Dkt. #6 at 642-43). In treatment notes dated the same day, Dr. Kelly further indicated that plaintiff's work shifts should be limited to 4-5 hours per day. (Dkt. #6 at 632).

On February 7, 2020, treating internist Dr. Robert Berke completed a medical source statement, based on a three-year treatment history. Citing plaintiff's lumbosacral MRI, Dr. Berke diagnosed complex regional pain syndrome of the left lower limb, intervertebral disc disorders with radiculopathy of the lumbar region, pain on the left lower leg, and other spondylosis with radiculopathy of the lumbar region, all with a "poor" prognosis for "a disorder that is historically difficult to treat [with regards to] pain control." Citing objective findings of left leg pain and swelling and low back pain, plaintiff's "very poor response to pain management," and MRI scans showing a large disc bulge at L4-5 and small protrusion at L5-S1, Dr. Berke indicated that plaintiff was incapable of even "low stress" jobs due to pain. He further opined that plaintiff could sit or stand for no more than 15 minutes at a time, for a total of no more than 2 hours in an 8-hour workday, and could not walk a city block without rest or severe pain. Finally, Dr. Berke indicated that plaintiff's symptoms would cause him to require unscheduled breaks during an 8-hour workday, that plaintiff should use a cane or assistive device when standing or walking, and would miss work more than 4 days per month due to his symptoms. (Dkt. #6 at 460-64).

The ALJ found Dr. Lee's opinion only "partially persuasive," observing that although it was "somewhat vague," it was based on objective abnormal examination findings, which were consistent with contemporaneous treatment notes reflecting limping gait, muscle atrophy of the left calf, etc. (Dkt. #6 at 23). The ALJ did not explain whether, and to what extent, his RFC determination incorporated any of the limitations described by Dr. Lee, such as a "moderate to severe" limitation as to standing and walking.

The ALJ rejected Dr. Berke's opinion as "unpersuasive," finding the assessed lifting, sitting, absenteeism, and stress-based limitations to be "[i]nconsistent with the overall record" and with plaintiff's testimony, e.g., that he could lift up to 15 pounds, and the lack of any severe mental impairment. (Dkt. #6 at 23-24). The ALJ also found that the opinion was "internally inconsistent," to the extent that it indicated that plaintiff required unscheduled breaks, but failed to specify how many breaks were necessary. While the ALJ's discussion thus purported to explain why Dr. Berke had overstated plaintiff's lifting ability, it did not address the ALJ's reasoning as to why a severe mental impairment was necessary to support absenteeism or stress-based limitations, or specify the "inconsistent" evidence upon which he was relying, in rejecting the remainder of the limitations described by Dr. Berke.

Likewise, the ALJ found Dr. Kelly's opinions "unpersuasive," to the extent that Dr. Kelly suggested an inability to complete a full workday, difficulty functioning at a consistent pace, and sitting, and also to the extent that she had indicated lifting/carrying limitations that were more consistent with medium work, because "evidence" and "contemporaneous examinations," which the ALJ did not identify or describe, did not support them. (Dkt. #6 at 24).

While an ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [the ALJ] cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (*quoting Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). Furthermore, if it is unclear how or by what chain of reasoning the ALJ reached his RFC determination, meaningful review is prevented and remand is necessary, regardless of how thoroughly or accurately the ALJ summarized the medical evidence of record. *See e.g.*, *Starr v. Saul*, 2019 U.S. Dist. LEXIS 144162 at *6 (W.D.N.Y. 2019)(when an ALJ does "not connect the record evidence and RFC findings,"

7

the court is left "with many unanswered questions and [lacks] an adequate basis for meaningful judicial review")(quoting *Gorny v. Commissioner*, 2018 U.S. Dist. LEXIS 184815 at *11 (W.D.N.Y. 2018)); *Jordan v. Berryhill*, 2018 U.S. Dist. LEXIS 195216 at *8-*9 (W.D.N.Y. 2018)(the ALJ must explain "the tether between her RFC [determination] and the non-stale medical opinions or statements from plaintiff," otherwise "the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand").

Here, while the ALJ engaged in a detailed summary of the evidence, and made some reference to it in rejecting all of the medical opinions of record in whole or in part, it is nonetheless unclear to the Court just what "evidence" or "examinations" were inconsistent with those opinions, or by what rationale the ALJ opted to adopt some of the limitations opined by medical sources to account for severe pain and left leg weakness, and not others. By partially or fully rejecting the opinions of every treating or examining source in the record on bases that were not adequately explained, I find that the ALJ improperly substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Because the incorporation of some of the opined limitations (particularly, those with respect to sitting, which are highly relevant to the sedentary RFC determined by the ALJ, as well as those related to stress, concentration, and absenteeism) conflicted with the ALJ's RFC determination and had the potential to alter his ultimate disability finding, the ALJ's failure to explain his rationale in rejecting them was not harmless, and remand is necessary.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings

(Dkt. #7) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #9) is denied, and this matter is remanded for further proceedings.

On remand, the ALJ should reassess the evidence of record, applying the proper standards to the medical opinions of record and soliciting additional and updated medical opinions as the ALJ may deem necessary and appropriate, and render an entirely new decision which provides a detailed explanation of the evidence of record supporting the ALJ's findings, identifies the weight given to each medical opinion of record, and explains the reasons that each of the opined limitations are adopted or rejected.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 11, 2023.